## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JACOB ALEXANDER, | ) | |
| | ) | No. 23 CV 14416 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| AURA REAL ESTATE | ) | |
| MANAGEMENT – NEW YORK, LLC, | ) | |
| GORIANA D. ALEXANDER, and | ) | |
| CHRISTOPHER S. ALEXANDER, | ) | |
| | ) | January 27, 2026 |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER

This case arises from a family loan Plaintiff Jacob Alexander ("Jacob") made that went bad. Jacob brings this action against Defendants Aura Real Estate Management – New York, LLC ("AREM"), Goriana D. Alexander ("Goriana"), and Christopher Alexander ("Christopher") to recover funds Jacob loaned to his sister-in-law, Goriana, and her company, AREM. After Defendants refused to repay the loan, Jacob discovered that his loan had not been secured by real property despite Goriana's representation. He then filed this action asserting claims for fraudulent transfer (Count I), negligent misrepresentation (Count II), violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 ("RICO") (Count III), novation (Count IV), breach of contract (Count V), breach of the implied covenant of

good faith and fair dealing (Count VI), promissory estoppel (Count VII), and unjust enrichment (Count VIII).[1]

Before the court is Defendants' motion for summary judgment. In his response to this motion, "Jacob does not contest dismissal of the following claims of his Complaint: (1) fraudulent transfer (Count I), (2) negligent misrepresentation against Christopher (Count II), (3) RICO (Count III), (4) novation (Count IV), (5) breach of contract against Christopher (Count V), (6) breach of implied covenant of good faith against Christopher (Count VI) and (7) unjust enrichment against Christopher (Count VII)." (R. 66, Pl.'s Resp. at 6.) As such, the court dismisses them with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). This dismissal leaves Count II against Goriana, Counts V and VI against Goriana and AREM, Count VII against Goriana and Christopher, and Count VIII against Goriana and AREM. For the following reasons, the motion is granted in part and denied in part:

## Facts

Defendants' and Jacob's LR 56.1 statements and their underlying declarations identify purported evidence not properly before this court—including evidence not having any tendency to prove or disprove a material fact, not shown to be admissible, and not factual in nature—which the court must disregard.[2] (See, e.g., R. 64-2, Defs.'

---

[1] Jacob originally filed this case in the Central District of California, but after Defendants filed a motion to dismiss or transfer, the Central District transferred the case to the Northern District of Illinois. (See R. 33.)

[2] In arguing that summary judgment is not appropriate, Jacob relies on promises Christopher and Goriana allegedly made. (See, e.g., R. 67, PSOAF ¶¶ 5-8, 11, 12, 21; see also R. 66, Pl.'s Resp. at 11-13.) To the extent such promises constitute party

LR 56.1 Stmt. ("DSOF") ¶¶ 29 (including improper legal conclusions (e.g., "Goriana was not and is not legally responsible for [AREM's] debt")); R. 67, Pl.'s Stmt. of Add'l Facts ("PSOAF") ¶¶ 4, 21 (citing to immaterial facts).) Only those facts that are properly presented, supported, and material to the motion are considered here. *See Cichon v. Exelon Gen. Co., LLC*, 401 F.3d 803, 809-10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with [LR] 56.1, the court chooses to ignore and not consider the additional facts that a litigant has proposed.").

Turning to the facts not excluded under LR 56.1, the court views them in the light most favorable to Jacob as the non-moving party—as it must at this stage. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Christopher is married to Goriana and is Jacob's half-brother. (R. 67, PSOAF ¶ 3 (citing R. 67-1, Jacob's Decl. ¶ 5).) Christopher and Goriana are Illinois citizens, and AREM is an Illinois corporation with its principal place of business in Chicago.[3] (R. 1, Compl.

---

statements under Federal Rule of Evidence 801(d)(2), they are not hearsay, and the court may consider them when ruling on the instant motion. But "[i]f the evidence is inadmissible hearsay, the court may not consider it. And when a document contains multiple layers of hearsay . . . each layer must be admissible." *Prude v. Meli*, 76 F.4th 648, 661 (7th Cir. 2023) (citation omitted).

[3] Jacob describes AREM both as "an Illinois corporation" and "a limited liability company organized and existing under the laws of the State of New York" in his Complaint. (R. 1, Compl. ¶¶ 11, 19; see also R. 67-4 at 3, 7 (describing AREM as "an Illinois corporation" but listing the entity as "Aura Real Estate and Management – New York, LLC" in the signature block).) In their Answer, Defendants admit only that AREM is a New York company. (R. 44, Ans. ¶ 11.) However, Illinois Secretary of State records reveal that AREM was an Illinois corporation that dissolved on November 10, 2017. *See* Ill. Sec'y of State Bus. Entity Search, https://apps.ilsos.gov/businessentitysearch/businessentitysearch (last visited Jan.

¶¶ 4, 5, 11, 19; see also R. 33.)  Goriana and her former partner, Michael Horrell (deceased),[4] invested in companies that purchased three Chicago properties, including the Cedar Street Properties and the 739 Wells property (together, "the Chicago Properties"), which AREM managed but did not own.  (R. 64-2, DSOF ¶¶ 1, 2 (citing R. 64-3, Goriana's Decl. ¶ 6); R. 67, JRDSOF ¶¶ 1, 2.)

AREM signed a promissory note with Jacob on September 19, 2016, under which Jacob agreed to lend it $100,000 at a rate of 12% interest per year, secured by pledges[5] ("2016 Note").  (R. 67, PSOAF ¶¶ 6, 8 (citing R. 67-1, Jacob's Decl. ¶¶ 8, 10); see also R. 1, Compl. ¶ 15; R. 64-3, Goriana's Decl. ¶ 9.)  Jacob communicated only with Goriana as AREM's representative regarding the loan terms, (R. 67, PSOAF ¶ 9

---

26, 2025) (listing "Aura Real Estate & Management, Inc." as an Illinois corporation, "Goriana Dawn Alexander" as its agent, and Chicago as its place of business).  The court takes judicial notice of the facts that AREM was an Illinois corporation doing business in Chicago because this information "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

[4]  Jacob argues that evidence of alleged conversations between Goriana and Horrell is barred by the Dead Man's Act, which prevents "an interested party from testifying on her own behalf to conversations or events that took place in the deceased presence."  (R. 66, Pl.'s Resp. at 14 (citing *Scheiner v. Guffey*, No. 20 CV 38, 2021 WL 5359587, at *6 (S.D. Ill. Nov. 17, 2021).)  The court need not reach the applicability of the Dead Man's Act at this stage because the facts to which Jacob points are immaterial or they amount to hearsay that has not been shown to be admissible.  The court's ruling is limited to evaluating the current motion, so the parties may raise this evidentiary issue in a motion *in limine* or at trial if necessary.

[5]  The 2016 Note does not define the term "Pledges" except to say that the Note "is secured by certain Pledges of even date herewith executed by Maker, as Pledgor, for the benefit of and delivered to Lender."  (R. 1, Compl., Ex. A at 1.)  The same language appears in the subsequent promissory note AREM and Jacob signed on September 29, 2017.  (See id. Ex. B at 1; R. 67-4, 2017 Note at 1.)

4

(citing R. 67-1, Jacob's Decl. ¶ 11)), and she asked Jacob to loan money to her and her company, AREM, (R. 67, PSOAF ¶ 5 (citing R. 67-1, Jacob's Decl. ¶ 7)). He then signed another promissory note with AREM on September 29, 2017 ("2017 Note"), agreeing to lend it $130,000 based on the following terms: (1) 12% interest per year; (2) if not paid within 10 days after the due date, an additional 4% interest per year; (3) maturity date of September 28, 2018; and (4) secured by pledges. (R. 67-4, 2017 Note at 1, 4; see also R. 64-2, DSOF ¶ 3; R. 67, JRDSOF ¶ 3; R. 67, PSOAF ¶ 10.) The 2017 Note states that it was "executed and delivered in Newport Beach, California" and Nevada law[6] governs its terms. (R. 67, PSOAF ¶ 22 (citing R. 67-4, 2017 Note at 6).) Goriana says AREM used the loan to invest in "management of the Cedar Street Properties." (R. 64-2, DSOF ¶ 8 (citing R. 64-3, Goriana's Decl. ¶ 11).) But Jacob responds that Goriana promised the loans would be used to purchase properties, giving him equity interest in them. (R. 67, JRDSOF ¶ 8 (citing R. 67-1, Jacob's Decl. ¶ 23).)

The parties do not dispute that the 2017 Note "reflects that it was signed by Goriana," but she denies "affix[ing] her signature to the note" or drafting or negotiating its terms. (R. 64-2, DSOF ¶ 4 (citing R. 64-3, Goriana's Decl. ¶ 10); R. 67, JRDSOF ¶¶ 4, 8 (citing R. 67-1, Jacob's Decl. ¶¶ 13, 23).) Goriana says she managed short-term rentals for AREM but did not have "operational control over [AREM's] business dealings." (R. 64-2, DSOF ¶¶ 7, 18 (citing R. 64-3, Goriana's Decl. ¶¶ 5, 8,

---

[6] The parties do not explain the choice of Nevada law over either California or Illinois law, except to say that Horrell drafted the 2017 Note using a template that included Nevada law. (See R. 64-1, Defs.' Summ. J. Mem. at 7.)

5

14).)  Goriana also claims she did not have "signatory authority on any bank account" associated with AREM or properties it managed.  (R. 64-2, DSOF ¶ 6 (citing R. 64-3, Goriana's Decl. ¶ 5).)  Christopher and Goriana further attest they never received or controlled Jacob's loan funds or any bank account receiving those funds, and they did not receive or pay back money Jacob loaned to AREM.  (R. 64-2, DSOF ¶¶ 9, 10, 11, 17 (citing R. 64-3, Goriana's Decl. ¶¶ 9, 13, Christopher Decl. ¶¶ 12, 14).)  Jacob disputes these assertions, pointing out that Goriana signed the 2017 Note and that he observed her "directly manage" AREM's bank accounts, including her using those accounts to send funds to and receive funds from other accounts.  (R. 67, JRDSOF ¶¶ 4, 6, 8, 10 (citing R. 67-1, Jacob's Decl. ¶¶ 13, 22-24).)

Pursuant to the terms of the 2017 Note, AREM made interest payments to Jacob from December 2017 to July 2018.  (R. 67, PSOAF ¶ 11 (citing R. 67-1, Jacob's Decl. ¶ 14); see also R. 1, Compl. ¶¶ 22-29; R. 64-2, DSOF ¶ 12.)  Thereafter, AREM ceased payments, and Jacob's demands for repayment of the 2017 Note were unsuccessful.  (R. 67, PSOAF ¶ 11 (citing R.67-1, Jacob Decl. ¶ 14); see also R. 1, Compl. ¶¶ 37-38.)  Goriana attributes AREM's failure to make payments to higher property taxes.  (R. 64-2, DSOF ¶ 13 (citing R. 64-3, Goriana's Decl. ¶ 11).)  In fact, Goriana declares that the Chicago Properties went into foreclosure in July 2019, causing her to lose her investment in them.  (Id. ¶¶ 15, 16 (citing R. 64-3, Goriana's Decl. ¶ 12).)

Jacob sought to recoup his loan proceeds from Goriana personally because he says she repeatedly promised to pay back his loan.  (See, e.g., R. 67, PSOAF ¶ 11

(citing R. 67-1, Jacob's Decl. ¶ 14 (stating that Goriana promised to Jacob, "I will pay you your payments")); see also R. 67-5.) Indeed, Jacob recites a litany of promises Goriana texted to Jacob ("Goriana's Promises"):

(a)    "I am trying to cash out And will get you paid." (JA0002.)

(b)    "You will get your money back. I just need to get cash[ed] out. It's in real estate. Please know that." (Id.)

(c)    "Of course, I won't screw you over ever. I have to get rid of some of these partners, and I just got off [the] phone with 3 million raise[d] . . . [y]our [sic] [a] priority." (Id.)

(d)    "I would never take your money." (JA0005.)

(e)    "You will get it all and interest." (Id.)

(f)    "I am sued daily And I sue everyone too That's what happens . . . Anyone with anything is constantly in lawsuits." (Id.)

(g)    "But what you should know is this . . . I will pay you your cash." (JA0007.)

(h)    "Don't panic I will give you a topper." (Id.)

(i)    "I haven't sold anything. When I do you will be paid." (JA0008.)

(j)    "Not your business I will pay you." (Id.)

(k)    "Don't be bummed I won't take your money like other family members did. I don't do that. I can't tell you details but as I told you I will pay you and your interest plus a bonus. We spoke about this. I would never take your money. Ever ever ever . . . I am going to pay you." (JA0009.)

(l)    "I will pay you when I can." (JA0010.)

(m)    "I told you I would pay you." (Id.)

(n)    "You will be paid on your investment." (JA0012.)

(o)    "Cause I don't cheat anyone." (Id.)

(p)    "And I explained it all I am doing its way over your head to even understand. You think I would not pay a family member [?]" (Id.)

(q)     "I am sorry.  I can't cut you a check today.  But you will get your money back."  (JA0013.)

(r)     "Hopeful and other cases care looking good."  (JA0014.)

(s)     "[Y]our my first person who gets cash."  (JA0015.)

(t)     "Yes I will be booking a flight and going to Serbia . . .  Oh yes and first class celebrate."  (Id.)

(u)     "I wish I could pay weekly but I don't have the funds to do so otherwise I would.  I am going to pay you first as soon as I get my money."  (JA0016.)

(v)     "Probably going to be able to get you money sooner I am looking at July 15 or by end of July And your full amount I am hoping to have."  (JA0017.)

(w)     "Thank you for believing in me.  Turned out a good investment for you percentage wise."  (Id.)

(x)     "I need your wire instructions.  I can't tell you exact date but that time frame.  So plan on it."  (JA0018.)

(y)     "Good we closed I think money 45 days."  (JA0020.)

(z)     "So as soon as cash in send you  What I can . . . .  We are finding 20 million."  (Id.; see also JA0023 ("I am Doing my best to get you money.  Trust me."))

(aa)    "Still in legal battles but it's ok my plant will be ipen (sic)."  (JA0026.)

(bb)    "It's 450 million dollars."  (JA0027.)

(cc)    "Well you will he (sic) paid. Then all is good."  (JA0028.)

(dd)    "I am hoping to pay you all in first."  (JA0029.)

(ee)    "[I]t's a sale of a $450 million bond.  I will get you some funds."  (JA0030.)

(ff)    "Guy called . . . next week is giving Randy . . . couple . . . million . . .  We are closing . . .  Thursday [or] Friday [of] next week I am flying out Tuesday . . .  They are doing small funding this month . . . then a larger one . . .  So I am going to wire you next week."  (JA0032-33.)

8

(gg)    "So I am going to wire you next week depending on when closing takes place 20 k, then remainder in two payments January 15 and feb 15 so it's done . . .  Please give me wire instructions again." (JA0034.)

(hh)    "When I have money in abd (sic)  I am wiring I wiol (sic) text you." (JA0035.)

(ii)    "Its there, and no one has earned interest on it origins of the funds . . . in question . . . were Russia, Africa."  (JA0037.)

(jj)    "I have a plant that will make 2.4 billion next 15 years."  (JA0040.)

(kk)    "Right now giving 25 million for 25 million 6 months from now pretty good deal."  (Id.)

(ll)    "Don't pray it's happening it's just when need it now."  (Id.)

(mm)   "So waiting on Camco, then will fund  .  .  .  whole amount." (JA0043.)

(nn)    "Just hold your powder.  Will happen."  (JA0044.)

(oo)    "It's business and this is between me and you.  Nobody else." (JA0046.)

(pp)    "Going to pay you the $130k . . .  Your investment I am paying pack.  Send wire info."  (JA0049.)

(qq)    "I don't cheat my family.  It's my cash.  I will wire it.  Thanks." (JA0050.)

(rr)    "Got it . . .  Text you [when] sent . . . $130k."  (JA0052.)

(ss)    "Just the $130k . . . paying you what you put in . . . the money is gone . . .  I am paying you this out of my money [and] not the investment."  (JA0054.)

(R. 67, PSOAF ¶ 12 (citing R. 67-1, Jacob's Decl. ¶ 15).)[7]

---

[7] This block quotation includes Jacob's recitation of Goriana's Promises, followed by Bates-stamped page numbers (e.g., JA0002, JA0005) identifying underlying documents Jacob produced to Defendants during discovery.

But for these promises, Jacob says he would have acted sooner to recover the loan amount. (Id. ¶¶ 13, 14 (citing R. 67-1, Jacob's Decl. ¶¶ 16, 17).) Further, had he known that Goriana or AREM was experiencing "financial troubles" or his loan was unsecured, Jacob says he would not have signed the 2017 Note. (Id. ¶¶ 16, 18, 19 (citing R. 67-1, Jacob's Decl. ¶¶ 19, 25, 26).) In their answer to Jacob's Complaint, Defendants admit that Goriana "intended to deceive [Jacob] and to induce [him not to] tak[e] action such as declaring a breach of the 2017 Note" and "knew that her misrepresentations and/or omissions of material facts to Jacob were false or alternatively were made in reckless disregard of the truth." (Id. ¶¶ 23, 24 (citing R. 44, Ans. ¶ 35).) Christopher maintains he was never involved with AREM, (id. ¶ 32; see also R. 64-3, Christopher's Decl. ¶¶ 12, 14), but Jacob disputes this assertion, relying on Christopher's promise to repay him $10,000, (R. 67-1, Jacob's Decl. ¶ 30). On January 19, 2023, Defendants denied that Goriana or Christopher owes Jacob any money under the 2017 Note. (See R. 1, Compl. ¶ 38.) This lawsuit followed.

## Analysis

Defendants characterize this action as "a simple collection case" stemming from a series of real estate investments that ultimately failed. (R. 64-1, Defs.' Summ. J. Mem. at 2.) They argue summary judgment should be granted because neither Goriana nor Christopher directed the use of Jacob's loan proceeds or guaranteed the 2017 Note in writing and AREM is insolvent. (Id. at 1-2.) Jacob responds that the

parties dispute material facts and, as such, his remaining claims against Defendants should proceed to trial. (R. 66, Pl.'s Resp. at 1.)

Summary judgment is appropriate if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court's function at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Summary judgment is not appropriate if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. In making a summary judgment determination, the court views the record in the light most favorable to non-moving party Jacob and draws all reasonable inferences in his favor. *O'Leary*, 557 F.3d at 630.

## A.    Choice of Law

Before reaching the merits of Defendants' motion, the court must determine which laws apply to Jacob's claims. The 2017 Note includes a choice-of-law clause stating, "This Note shall be governed by the internal laws of the State of Nevada and, to the extent they preempt the laws of such state, the laws of the United States." (R. 67-4, 2017 Note at 6.) Given this express language, the parties do not dispute that Nevada law governs the interpretation of the 2017 Note. (Id.; see also R. 64-1, Defs.' Summ. J. Mem. at 7.) Accordingly, Nevada law governs Jacob's contract claim in Count V. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547

11

(7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." (internal quotations and citation omitted)); *Hofeld v. Nationwide Life Ins. Co.*, 59 Ill.2d 522, 529 (1975) ("Generally, the law applicable to a contract is that which the parties intended, assuming such an intent. When that intent is expressed, it should be followed.").

While the court is willing to apply Nevada law to the interpretation of the 2017 Note itself, the court declines to apply Nevada law to the remaining claims. By its own terms, the choice-of-law provision in the 2017 Note does not extend to quasi-contract or tort claims—and the parties fail to develop any argument clarifying which law applies to such claims. Horrell drafted the 2017 Note using a template, (see R. 64-1, Defs.' Summ. J. Mem. at 7), and apparently neglected to change the governing law from "Nevada" to "Illinois." This theory is borne out by another clause in the 2017 Note, which makes clear that the Note "complies with the usury laws of the State of Illinois." (R. 67-4, 2017 Note at 6.) In any event, Illinois courts use a "most significant contacts" approach to determine which law controls. *Ruiz v. Blentech Corp.*, 89 F.3d 320, 323-24 (7th Cir. 1996) (citing *Ingersoll v. Klein,* 46 Ill.2d 42, 48 (1970)). Here, Jacob asserts claims against Illinois citizens Goriana and Christopher, along with AREM, an Illinois corporation with its principal place of business in Illinois, based on acts that occurred in Illinois. (See R. 1, Compl. ¶¶ 4, 5, 11, 19; R. 33; R. 67, PSOAF ¶ 1; R. 67-4, 2017 Note.) Although Jacob may have suffered injuries in California given his citizenship there, he does not develop an

12

argument that California law should govern.  Regardless, under the most significant contacts standard, Illinois law applies to the remaining claims.

**B.    Contract Claim Against AREM & Goriana**

The court turns first to Jacob's contract claim in Count V against AREM and Goriana.  (See R. 67-4, 2017 Note at 6.)  Under Nevada law, a "breach of contract is 'a material failure of performance of a duty arising under or imposed by agreement.'" *Creative Surfaces, Inc. v. Swonger*, No. 17 CV 2494, 2018 WL 4279225, at *2 (D. Nev. June 19, 2018) (citing *Bernard v. Rockhill Dev. Co.*, 103 Nev. 132, 135 (Nev. 1987)). To establish a breach of contract, the plaintiff must show the existence of a valid contract, breach by a defendant, and damages to the plaintiff.  *See Contreras v. Am. Fam. Mut. Ins. Co.*, 135 F. Supp. 3d 1208, 1224 (D. Nev. 2015).  Jacob asserts that he has established the validity of the 2017 Note, breach based on Goriana's and AREM's failure to repay him and resulting damages.  (R. 66, Pl.'s Resp. at 11-12 (citing PSOAF ¶¶ 6-16).)  The parties do not dispute the validity of the contract, damages under the 2017 Note, or AREM's obligations under that note.[8]  But Goriana says she never "guarantee[d] [AREM's] debt to Jacob" and no writing establishes that she is responsible for AREM's obligations.  (R. 64-1, Defs.' Summ. J. Mem. at 6.)

As an initial matter, Defendants do not defend AREM's failure to repay the loan to Jacob in accordance with the terms of the 2017 Note.  (See generally id.)  As

---

[8]  Defendants suggest that Jacob "cannot present any evidence that he was damaged by waiting to bring this lawsuit due to [] representations made by [] Christopher or Goriana," but this argument applies to the promissory estoppel claim, not the breach of contract claim.  (R. 64-1, Defs.' Summ. J. Mem. at 7.)

a result, Jacob concludes that AREM concedes it is in breach of the contract. (See R. 66, Pl.'s Resp. at 11.) For support he points to Defendants' admission that "[a]fter June 2018, [AREM] was unable to continue paying the interest due on the loan from Jacob because the City of Chicago increased property taxes, which caused [AREM] to have negative cash flow for the Cedar Street Properties," (id. (citing R. 64-2, DSOF ¶ 13)), along with Goriana's attestation that AREM is "insolvent," (R. 64-3, Goriana's Decl. ¶ 3). These statements demonstrate that AREM breached the 2017 Note, but Jacob did not file his own motion for summary judgment. Nevertheless, in light of the evidence in the record and given the mandate under Rule 1 that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding," this court finds that Jacob is entitled to judgment in his favor and against AREM on the breach of contract claim.

As to Goriana's alleged breach of the 2017 Note, Jacob seeks to impose AREM's obligations under the note on Goriana, (R. 66, Pl.'s Resp. at 11), but she says she is not responsible for AREM's debt to Jacob and no writing suggests otherwise, (R. 64-1, Defs.' Summ. J. Mem. at 7). Starting with the latter argument, Goriana argues that the statute of frauds shields her from contractual liability because no writing establishes that she must individually satisfy AREM's debt to Jacob. (R. 64-1, Defs.' Summ. J. Mem. at 6-7.) But despite raising eight affirmative defenses in their Answer in December 2023, Defendants did not raise the statute-of-frauds defense. (See generally R. 44, Ans.)

14

Federal Rules of Civil Procedure 8(c) and 15 "prescribe the processes for raising affirmative defenses and considering untimely affirmative defenses." *Burton v. Ghosh*, 961 F.3d 960, 962 (7th Cir. 2020). Under Rule 8(c)(1), "[i]n responding to a pleading, a party must affirmatively state any . . . affirmative defense, including . . . statute of frauds." A defendant waives an affirmative defense by "knowingly and intelligently relinquish[ing]" it and forfeits it by "fail[ing] to preserve [it] by pleading it." *Burton*, 961 F.3d at 965 (citing *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478 (7th Cir. 2019)). Rule 15(a)(2) in turn permits a party to amend a pleading "only with the opposing party's written consent or the court's leave."

Goriana forfeited her statute-of-frauds defense by failing to plead it in her Answer. (See generally R. 44, Ans.); *see also* Fed. R. Civ. P. 8(c)(1); *Burton*, 961 F.3d at 965. While the court has discretion to permit an untimely affirmative defense if Jacob will not suffer prejudice based on the delay, *see Reed*, 915 F.3d at 478, fact discovery in this case closed a year ago in January 2025, (see R. 62), and allowing Goriana to assert a statute-of-frauds defense at this stage would require reopening fact discovery and driving up the parties' fees and expenses. Goriana offers no compelling reason for the court to take such drastic action. Moreover, Defendants have not shown that they asked Jacob for written consent to amend their Answer or that they sought leave of court to do so. *See* Fed. R. Civ. P. 15(a)(2).

Even if Goriana had not forfeited a statute-of-frauds defense, it does not apply here as a matter of law. "[A]n oral contract which cannot be performed within the space of one year is unenforceable in law as violating the Statute of Frauds, Illinois

15

Revised Statute, 1967, Chapter 59, Section 1." *Marvin Glass & Assocs. v. Gardel*, 419 F.2d 1284, 1285 (7th Cir. 1970); *see also* 740 Ill. Comp. Stat. Ann. 80/1. Here, there is no evidence to show that Goriana's promise to assume AREM's debt required more than one year to perform. As such, the statute of frauds does not apply.

Turning to Goriana's alleged responsibility for AREM's debt to Jacob, Goriana does not develop any argument establishing that she is entitled to summary judgment on the breach of contract claim. (See generally R. 64-1, Defs.' Summ. J. Mem.) Her reply in support of summary judgment simply points out that the 2017 Note does not name Goriana as a borrower, (R. 68, Defs.' Reply at 1-2; see also R. 67-4, 2017 Note at 3 (reflecting that Goriana is not listed as a "suret[y], guarantor[] and/or endorser[] of th[e] Note")), and it precludes provisions therein from being modified, discharged, or waived unless in writing, (R. 67-4 at 4). Jacob argues in opposition that genuine issues of material fact exist, including the issue of whether Goriana was "acting in her individual or representative capacity" on behalf of AREM. (R. 66, Pl.'s Resp. at 11.)

When viewed in the light most favorable to Jacob, the facts show that only about six weeks before AREM dissolved, *see Ill. Sec'y of State, supra* note 3, Jacob signed the 2017 Note, agreeing to lend AREM $130,000 provided he would be paid interest, the principal would be repaid, and the loan would be secured by pledges. (R. 67-4, 2017 Note at 1, 4; see also R. 64-2, DSOF ¶ 3; R. 67, JRDSOF ¶ 3; R. 67, PSOAF ¶ 10.) Goriana communicated with Jacob about the terms of the Note. (R. 67, PSOAF ¶ 9 (citing R. 67-1, Jacob's Decl. ¶ 11).) AREM—and by extension Goriana,

who signed the 2017 Note, (R. 66, Pl.'s Resp. at 11 (citing R. 64-1, Defs.' Summ. J. Mem. at 4); see also R. 64-2, DSOF ¶ 14)—breached the terms of the 2017 Note, causing Jacob to suffer monetary damages, (R. 67, PSOAF ¶ 11 (citing R. 67-1, Jacob's Decl. ¶ 14); see also R. 1, Compl. ¶¶ 37-38). There are genuine issues of material fact as to whether Goriana "affix[ed] her signature" to the 2017 Note, had "operational control" or "signatory authority" over AREM's business dealings or accounts, and received or had control over Jacob's loan proceeds. (R. 64-2, DSOF ¶¶ 4, 6, 7, 9-11, 17, 18 (citing R. 64-3, Goriana's Decl. ¶¶ 5, 8, 9, 10, 13, 14).) And Defendants admit that Goriana "intended to deceive [Jacob] and to induce [him not to] tak[e] action such as declaring a breach of the 2017 Note" and "knew that her misrepresentations and/or omissions of material facts to Jacob were false or alternatively were made in reckless disregard of the truth." (R. 44, Ans. ¶ 35.) Taken together, these facts suggest that Jacob may be able to demonstrate that Goriana bears individual liability for AREM's breach of the 2017 Note. While the parties do not provide the standards under Nevada law for making such a determination, or develop any argument applying the same, the court is satisfied that Goriana has not met her burden of showing that she is entitled to summary judgment on this claim.

## C. Promissory Estoppel Claim Against Goriana & Christopher

The court next addresses Jacob's promissory estoppel claim in Count VII against Goriana and Christopher. To establish promissory estoppel under Illinois law, a claimant must establish that "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and

foreseeable by defendants, and (4) plaintiff relied on the promise to [his] detriment." *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523-24 (Ill. 2009). Jacob pleads his promissory estoppel claim in the alternative, (R. 1, Compl. ¶ 82), as it is "an available theory [only] in the absence of a contract," *Newton*, 233 Ill.2d at 52; *see also Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005) (finding that a promissory estoppel claim "will only succeed where all the other elements of a contract exist, but consideration is lacking"). Here, Jacob argues that he has identified evidence establishing each element of a promissory estoppel claim, (R. 66, Pl.'s Resp. at 13), starting with Goriana's promises to pay AREM's debt to Jacob and to secure the loan by purchasing properties, and Christopher's promise to repay Jacob $10,000, (R. 67, PSOAF ¶¶ 8, 11, 12 (citing R. 67-1, Jacob's Decl. ¶ 14, 15, 17, 23)). Jacob says he reasonably relied on these promises to his detriment, as he would have acted sooner to declare a breach to recover some or all of his funds or never signed the 2017 Note if Goriana or Christopher had disclosed AREM's financial difficulties or the failure to secure collateral for his loan. (R. 67, PSOAF ¶¶ 13, 14, 16, 18, 19 (citing R. 67-1, Jacob's Decl. ¶¶ 16, 17, 19, 25, 26).)

The court agrees with Jacob at least with respect to his claim against Goriana. In his Complaint, Jacob alleges that "[f]rom at least 2018 and as recently as 2022, [Goriana and Christopher] affirmed on multiple occasions . . . their clear and unambiguous promise to assume personal liability for the remaining balance due under the 2017 Note." (R. 1, Compl. ¶ 83.) Jacob identifies sufficient evidence detailing Goriana's Promises to pay Jacob for the failed loan. (See, e.g., R. 67-1,

Jacob's Decl. ¶¶ 14, 15; R. 67-5; R. 67-6 (citing JA0002, JA0005, JA0007-10, JA0012-18, JA0020, JA0023, JA0026, JA0027, JA0029, JA0030, JA0032-35, JA0037, JA0040, JA0043, JA0044, JA0046, JA0049, JA0050, JA0052, JA0054).) He further declares that before he signed the 2017 Note, Goriana represented to him that his "funds would be used to purchase the properties (and [he] would have equity in them), not for [AREM]'s management of the properties," (R. 67-1, Jacob's Decl. ¶ 23), and he "never would have made the loan" without these promises. (R. 67, PSOAF ¶ 8 (citing R. 67-1, Jacob's Decl. ¶ 10).) Jacob attests that he incurred monetary damages because Defendants strung him along with empty promises, without advising him that AREM was insolvent or that the Chicago Properties were foreclosed on in July 2019, precluding him from recovering his loan proceeds, (id. ¶ 19 (citing R. 67-1, Jacob's Decl. ¶ 26); see also R. 64-2, DSOF ¶¶ 15, 16 (citing R. 64-3, Goriana's Decl. ¶ 12).)

For their part, Defendants admit that Goriana "intended to deceive [Jacob] and to induce [him not to] tak[e] action such as declaring a breach of the 2017 Note" and "knew that her misrepresentations and/or omissions of material facts to Jacob were false or alternatively were made in reckless disregard of the truth." (R. 44, Ans. ¶ 35.) While Goriana contends that her "after-the-fact" promises to Jacob are not enforceable and cannot create a contract, (R. 64-1, Defs.' Summ. J. Mem. at 6-7), she does not develop her argument and thus fails to satisfy her burden of showing that she is entitled to judgment as a matter of law. To the extent she relies on the statute

19

of frauds to defeat the promissory estoppel claim, (R. 64-1, Defs.' Summ. J. Mem. at 7), she has forfeited this defense as discussed.

The same is not true as to Jacob's claim against Christopher because Jacob simply has not identified enough evidence to establish the required elements. *See Gabryszak v. Aurora Bull Dog Co.*, 427 F. Supp. 3d 994, 999 (N.D. Ill. 2019) ("[A]t the summary judgment stage the plaintiff is required to point to evidence, not rely on the allegations in a complaint." (citing *Estate of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017)). For starters, Jacob does not show that Christopher's offer to pay Jacob $10,000 constituted a "clear and unambiguous promise to assume personal liability for the remaining balance due under the 2017 Note," as alleged in the Complaint. (R. 1, Compl. ¶ 83; see generally R. 67, PSOAF ¶ 21 (citing R. 67-1, Jacob's Decl. ¶ 30 (stating only that "Christopher offered to pay me back $10,000 of my loan").) Jacob also does not offer evidence establishing that he relied on Christopher's promise or that his reliance was expected or foreseeable by Christopher. (See id.); *see also Newton*, 233 Ill.2d at 52. As such, Jacob's promissory estoppel claim against Christopher must fail. *See Dumas*, 416 F.3d at 677. The court grants Christopher summary judgment in his favor and against Jacob and dismisses him from this action.

## D.   Unjust Enrichment Claim Against AREM & Goriana

Jacob's claim for unjust enrichment in Count VIII cannot be sustained in the presence of a valid contract. Under Illinois law, a plaintiff must establish that the defendant "unjustly retained a benefit to the plaintiff's detriment" and "retention of

the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160 (1989). "[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (1992). Indeed, "[i]f the complaint expressly alleges a contract, the count alleging unjust enrichment is properly dismissed." *LKQ Corp. v. Rutledge*, 96 F.4th 977, 981 (7th Cir. 2024) (citing *Karimi v. 410 N. Wabash Venture, LLC*, 2011 IL App. (1st) 102670, ¶ 14).

Jacob asserts that he identified sufficient evidence establishing each element required for an unjust enrichment claim. (R. 66, Pl.'s Resp. at 8-9.) Specifically, he says "he paid money to Goriana and her company [AREM] and it would be unjust not to force her to pay him back." (Id. at 8.) But because Jacob and AREM entered into a written contract governing their relationship with respect to his loan, (see R. 64-1, Defs.' Summ. J. Mem. at 8-9), his unjust enrichment claim against AREM fails as a matter of law, *see People ex rel. Hartigan*, 607 N.E.2d at 177.

As to Jacob's claim against Goriana, he points out that the parties dispute material facts as to the role she played for AREM, including whether she had "operational control" or "signatory authority" over AREM's business dealings or accounts and whether she received or had control over Jacob's loan proceeds. (R. 64-2, DSOF ¶¶ 4, 6, 7, 9-11, 17, 18 (citing R. 64-3, Goriana's Decl. ¶¶ 5, 8, 9, 10, 13, 14).) But Jacob does not plead unjust enrichment as an alternative theory of recovery. (See R. 1, Compl. ¶¶ 86-89.) Nor does he argue that the contract was "no longer in

full force and effect, or otherwise unenforceable." *Karimi*, 2011 IL App. (1st) 102670, ¶ 14. He instead incorporates by reference the allegations set forth in the preceding paragraphs, which assert that a valid and enforceable contract exists. (See generally R. 1, Compl. ¶¶ 40-80, 86-90); *see also Karimi*, 2011 IL App. (1st) 102670, ¶ 14. Because "the existence of a contract between the parties is undisputed," this claim— as asserted against both AREM and Goriana—cannot survive summary judgment. *LKQ Corp.*, 96 F.4th at 981.

## E.    Negligent Misrepresentation Claim Against Goriana

Turning to Count II, Jacob fails to establish that he can prevail on his negligent misrepresentation claim. (See generally R. 64-1, Summ. J. Mem.) Illinois law requires the following elements to state a claim for negligent misrepresentation:

> (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information.

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833-34 (7th Cir. 2007). Additionally, "[w]here, as here, purely economic damages are sought, [the Illinois Supreme Court] has imposed a duty on a party to avoid negligently conveying false information only if the party is in the business of supplying information for the guidance of others in their business transactions." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d 326, 332 (2006) (citations omitted); *see also Wheaton Theatre, LLC v. First Am. Title Ins. Co.*, No. 18 CV 5248, 2019 WL 10371609, at *2 (N.D. Ill. April 8, 2019) (explaining that because "plaintiffs cannot

22

recover damages for a purely economic loss for actions sounding in tort" under Illinois' *Moorman* doctrine, plaintiffs alleging negligent misrepresentation must show that a defendant "is in the business of supplying information and consequently owes a duty to" that defendant).

Jacob says he submitted evidence showing misstatements of material fact, including Goriana's misrepresentations that: (1) he "would have a security interest in the Cedar Street Properties for the loan he was providing to her and [AREM]"; (2) AREM was financially able to repay the funds loaned; and (3) she would repay the loan. (R. 66, Pl.'s Resp. at 10-11 (citing R. 67, PSOAF ¶¶ 6-10, 16-17).) Jacob contends that Goriana "had reason to believe these representations were false," but made them anyway to induce Jacob to make the loan, which he did, resulting in economic damages sustained by him. (Id. at 11 (citing R. 67, PSOAF ¶¶ 6-10, 16-17, 23-24).) Noticeably absent, however, are any allegations or evidence showing that Goriana was "in the business of supplying information for the guidance of others in their business transactions," as required to prevail on a negligent misrepresentation claim where only monetary damages are sought. *First Midwest Bank, N.A.*, 218 Ill.2d at 332. The Complaint does not recite such an allegation. (See, e.g., R. 1, Compl. ¶¶ 48-52.) And Jacob's evidence does not show how Goriana qualifies as an information provider. (See generally R. 66, Pl.'s Resp.; R. 67-1, Jacob's Decl.) While Jacob declares that when Goriana solicited his investment, she indicated that he would have an equity interest in real property, (R. 67-1, Pl.'s Decl. ¶ 7 ("This is called equity—You would own the property and you would earn that percentage net

proceeds of a Sale.")), he does not develop any argument explaining how such a statement shows that Goriana is "in the business of supplying information," *see Wheaton Theatre, LLC*, 2019 WL 10371609, at *3 (noting that a plaintiff is not "without any recourse" where "the negligent misrepresentation is contained within information which is incidental to a tangible product" because "the accuracy of such information can be memorialized in contract terms"). Summary judgment is therefore granted in Goriana's favor on this claim.

## F. Good Faith and Fair Dealing Claim Against AREM & Goriana

Jacob's claim for breach of the implied covenant of good faith and fair dealing in Count VI cannot be sustained. Illinois law does not recognize an independent cause of action for breach of the implied covenant. *Conviser v. DePaul Univ.*, 649 F. Supp. 3d 686, 709 (N.D. Ill. Jan. 9, 2023). Rather, every contract imposes an implied duty of good faith and fair dealing that, if breached, can give rise to a breach of contract claim. *Id.* The Seventh Circuit has interpreted the covenant "as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions." *Id.* (citing *Bernacchi v. First Chi. Ins. Co.*, 52 F.4th 324, 330 (7th Cir. 2022)). In any event, "parties to a contract are entitled to enforce the terms to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract." *Conviser*, 649 F. Supp. 3d at 709. Accordingly, Jacob's claim against AREM and Goriana fails as a matter of law, and summary judgment is warranted.

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. First, Counts I, III, and IV in their entirety and Counts II, V, VI, and VIII against Christopher are dismissed with prejudice. Second, summary judgment is entered in favor of Jacob and against AREM on Count V. Third, summary judgment is entered in favor of Goriana on Count II and AREM and Goriana on Counts VI and VIII and in favor of Christopher on Count VII. However, Counts V and VII against Goriana remain.

ENTER:

_____
Young B. Kim
United States Magistrate Judge